In the Matter of GLOBAL INTERNA-
TIONAL AIRWAYS
CORPORATION, Debtor.

GLOBAL INTERNATIONAL AIRWAYS
CORPORATION, Plaintiff,

v.

EVERGREEN AIR CENTER,
INC., Defendant.

GLOBAL INTERNATIONAL AIRWAYS
CORPORATION, Plaintiff,

v.

AIRTECH SERVICES, INC., Defendant.

Bankruptcy No. 83–02765–2–3–11.
Adv. Nos. 85–0291–2–3–11,
85–0607–2–3–11.

United States Bankruptcy Court,
W.D. Missouri, W.D.

Aug. 19, 1987.
As Amended Sept. 29, 1987.

See also, 80 B.R. 983.

court has previously circulated a proposed set of findings of fact and conclusions of law which would warrant denial of all of the plaintiff's requests for recovery. A copy of those findings of fact and conclusions of law is attached hereto and incorporated herein by reference. Those findings of fact and conclusions of law may be briefly summarized by stating that (1) they conclude that the date of delivery of the check issued in payment of an obligation, rather than the date of its honor by the bank, is the date of payment within the meaning of § 547(c)(2), *supra*, and (2) they find that all such dates of delivery either were within 45 days of the date when the duty to pay arose or occurred prior to the 90 day period next preceding bankruptcy. The decisions on the issue which have been handed down by the courts since the date of this court's circulation of the proposed findings of fact and conclusions of law have uniformly followed this rule.[1]

In responding to the court's proposed findings of fact and conclusions of law, the plaintiff has contended that defendants have failed to meet the burden of establishing the respective dates on which the respective duties to pay arose. "[T]he Court must find that to the extent that Defendant did not establish date of incurrence of debt, it has no choice but to interpret the invoices and work orders to establish dates of incurrence of debt or, in the alternative, find for Plaintiff due to Defendant's failure to carry its burden under § 547(c)(2)(B)." Plaintiff's Brief Filed December 18, 1986.

Eugene Harrison, U.S. Atty. Office, Kansas City, Mo., for defendant.

Ronald Weiss, Kansas City, Mo., for plaintiff.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT DENYING PLAINTIFF'S COMPLAINTS FOR RECOVERY OF PREFERENCES AND ALLOWING AIRTECH SERVICES, INC., A GENERAL UNSECURED CLAIM OF $17,009.48 AGAINST THE DEBTOR ESTATE

DENNIS J. STEWART, Chief Judge.

The plaintiff debtor has requested relief in the form of recovery of certain alleged preferential transfers pursuant to § 547 of the Bankruptcy Code. The defendants have erected defenses sounding under § 547(C)(2) of the Bankruptcy Code, to the effect that the payments sought to be recovered were made within 45 days of the date when the duty to pay arose. The

*Evergreen Air Center, Inc.*

This contention cannot reasonably affect any of the court's proposed findings with respect to the defendant Evergreen Air Center, Inc. Using the date of delivery of the check as the date of payment necessitates a conclusion that none of those challenged transfers occurred within the 90–day period next preceding bankruptcy.

---

1. On January 20, 1987, the Supreme Court of the United States denied certiorari in the *Kenitra* case. See —— U.S. ——, 107 S.Ct. 928, 93 L.Ed.2d 980. This appears to establish the decision's authoritative character as the leading case decision on this issue. Further, as is pointed out in *O'Neill v. Nestle Libbys P.R., Inc.*, 729 F.2d 35, 37 (1st Cir.1984), the clear letter of the *legislative history* under § 547 is to the effect that "[p]ayment is considered to be made when the check is delivered for purposes of Sections 547(c)(1) and (2)."

Even if it could be contended that one of the checks—which was delivered before the 90–day period but dishonored and then honored within the 90–day period—was preferential, the evidence clearly shows that the ultimate honoring of the check took place within 45 days of the date on which the duty to pay arose and thus the § 547(c)(2) defense applies.

### Airtech Services, Inc.

In respect of the checks written to Airtech Services, Inc., the dates of delivery were all within the 90–day period next preceding bankruptcy. The evidence clearly demonstrated, however, that a $60,000 check had been delivered within 45 days of the date when the duty to pay arose. Thus the § 547(c)(2) defense clearly applies.

The only troublesome issues which arise in these actions, therefore, arise because of two checks written to Airtech Services, Inc., in the respective sums of $85,000 and $65,000 as to which the court, in the proposed findings of fact and conclusions of law, concluded that there was no reliable evidence as to the date on which the duty to pay arose. This court concluded in its proposed findings of fact and conclusions of law that it was the plaintiff's evidentiary burden to establish this date.[2] As observed above, the plaintiff has insisted that burden belongs to defendant. With this

position, the defendant Airtech Services, Inc., appears to agree.[3] As the defendant Airtech Services, Inc., contends, however, the evidence before the court demonstrates that it gave subsequent unpaid[4] value to plaintiff within the meaning of § 547(c)(4), which exceeded the total of these preferential transfers by $17,009.45.[5] The defendant Airtech Services, Inc., will therefore be allowed an ordinary unsecured claim against the estate in that excess amount.[6] For the foregoing reasons, it is hereby

ORDERED, ADJUDGED, AND DECREED that the plaintiff's within complaints for recovery of preferential transfers be, and they are hereby, denied.[7] It is further

ORDERED that Airtech Services, Inc., be, and it is hereby allowed a general unsecured claim against the debtor's bankruptcy estate in the sum of $17,009.48.

### APPENDIX

FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT DENYING PLAINTIFF'S COMPLAINTS FOR RECOVERY OF ALLEGED PREFERENTIAL TRANSFERS

The plaintiff debtor-in-possession has filed complaints against each of the defendants for the purpose of recovering certain

---

2. It would seem to this court that it is always the plaintiff's burden to establish the date on which the duty to pay arose, simply as a matter of establishing the antecedency of the preexisting debt, which plaintiff is required to establish by the clear terms of § 547. However, for the purposes of this action, the court will have the contentions of the parties, issue both of them agree that it is defendant's burden. See note 3, infra.

3. Defendant Airtech Services, Inc., has at least conceded the point in urging the court to place its decision on two checks written to it on the basis of subsequent value rather than the burden-of-proof rule. See note 2, supra.

4. The rule of Matter of Isis Food, Inc., 39 B.R. 645 (W.D.Mo.1983), that the subsequent value may have been paid for and still meet the requirements of § 547(c)(4), seems contrary to common sense and the clear intent of the statute and has been rejected by subsequent authority.

5. The evidence to this effect is uncontradicted; see defendant's exhibits 101 and 102. [Editor's Note: These exhibits are included with the Appendix.]

6. The court cannot grant this prepetition indebtedness any more status than that of a general unsecured claim against the estate. See Matter of Isis Foods, Inc., 37 B.R. 334 (W.D.Mo.1984). The other rulings in that decision appear to be overridden by the more recent appellate court decisions in Kenitra and Nestle Libbys, see note 1, supra, but this holding as to the nonpayment of prepetition debts as expenses of administration still appears to be viable.

7. This court has no trouble finding and holding that the requirements of § 547(c)(2)(A) and (B) are met. The evidence clearly shows this. And see the defendant's brief filed December 18, 1986.

alleged preferential transfers within the meaning of § 547 of the Bankruptcy Code. The hearings of the merits of these actions have now been concluded, and the parties have recently concluded their briefing. The facts have been presented to the court by means of a combination of written stipulations of fact. As they are material, the facts may be summarized by the following charts and disclose the relevant dates concerning each of the challenged transfers:

Evergreen Air Center, Inc.

| Check number | Amount | Date of incurrence of debt | Date on check | Date delivered | Date honored by bank | Date of Bankruptcy |
|---|---|---|---|---|---|---|
| 4216 | $30,000 | "Prior to 05/31/83" [1] | 07/14/83 | 07/15/83 | 07/22/83 | 10/19/83 |
| 4168 | $50,000 | "Prior to 05/31/83" [2] | 07/22/83 | 07/15/83 | 07/25/83 | 10/19/83 |
| 4169 | $50,000 | 06/17– 07/18/83 [3] | 07/29/83 | 07/15/83 | 08/01/83 | 10/19/83 |
| * 4217 | $40,000 | 07/18/83 [4] | 08/05/83 | 07/15/83 | 08/15/83 (after initial dishonor) | 10/19/83 |
| 4218 | $40,000 | 07/18/83 [5] | 08/12/83 | 07/15/83 | 08/15/83 | 10/19/83 |

Airtech Services, Inc.

| Check number | Amount | Date of incurrence of debt | Date on check | Date delivered | Date honored by bank | Date of Bankruptcy |
|---|---|---|---|---|---|---|
| 4331 | $60,000 | * 06/25/83– $10,830.42 06/17/83– $43,416.17 | | 08/05/83 | 08/17/83 (after initial dishonor) | 10/19/83 |
| 4409 | $85,000 | | | 08/09/83 | 08/18/83 (after initial dishonor) | 10/19/83 |
| 3635 | $65,000 | | | 08/16/83 | | 10/19/83 |

The parties otherwise have stipulated that, with respect to all transfers made within the 90–day period preceding bankruptcy, all the other elements of a prefer-

---

**1.** The evidence does not clearly show when the obligation to pay arose, but, for the purpose of determining this action, it is *assumed* that it arose prior to May 31, 1983, and therefore more than 45 days in advance of the delivery of the check.

**2.** See note 1, *supra.*

**3.** The court has postulated that check 4169 was applied, at least in part, to the work evidenced by invoices 4970 and 4967, which show relevant completion dates as here stated. To the extent that no application is shown, plaintiff has failed to sustain its burden of showing when the duty to pay arose. "[T]he debt was 'incurred' for purposes of section 547(c)(2) no later than the date upon which the contractual work was completed, when the debtor then became obligated to pay for it." *Matter of Emerald Oil Co.,* 695 F.2d 833, 834, 835 (5th Cir.1983).

**4.** See note 3, *supra.* Cf. invoice number 4912.

**5.** See note 3, *supra.* Cf. invoice number 5082.

ence under § 547(b) are present. The only issues for resolution by the court are (1) which of the transfers were within the 90–day period; (2) with respect to which of the transfers is the defense of § 547(c)(2) (payment intended to be contemporaneous and in the ordinary course of business within 45 days of the date of incurring the debt) is available; and (3) the extent of availability of the "subsequent value" defense of § 547(c)(4) of the Bankruptcy Code.[6] The issues will be considered seriatim in the paragraphs which follow.

*None of the Payments to Evergreen except that made by check 4217 in the amount of $40,000 were made within the 90–day period next bankruptcy*

█ As observed above, the evidence shows that all the checks to Evergreen were delivered prior to the 90–day period next preceding bankruptcy. Further, the parties have expressly stipulated that "defendant Evergreen received the checks prior to the 90 day period but the checks cleared within the 90 day period."[7] The majority of the federal courts of appeals deciding the issue have determined that it is the date of delivery of the check which determines the date of transfer, for the purpose of discerning whether it was within the 90–day period preceding bankruptcy, rather than the date of the check's being honored by the bank. This is demonstrated by the following chart:

(A) *Date of delivery of check controls.*
(1) *In re Kenitra, Inc.,* 797 F.2d 790, 791 (9th Cir.1986) ("A debtor's payment by check on an existing debt, presented to the bank within a reasonable time and honored by the bank, is deemed made at the time the debtor gave the check to the creditor."); *Shamrock Golf Co. v. Richcraft, Inc.,* 680 F.2d 645, 646 (9th Cir.1982); *Engstrom v. Wiley,* 191 F.2d 684, 686 (9th Cir.1951).

(2) *O'Neill v. Nestle Libbys P.R., Inc.,* 729 F.2d 35, 37, 38 (1st Cir.1984) ("Since checks are normally considered present payments between parties ... the *delivery* of a check should supply the time of transfer ... [if] presented for payment within the 30–day period deemed reasonable under the U.C.C. and ... duly honored by the drawee bank.")

(3) *In re Arnett,* 731 F.2d 358, 361 (6th Cir.1984) ("[W]hen a cash sale [is] intended, acceptance of a check instead of cash did not change the character of the transaction, so long as the check was cashed within a reasonable period of time.")

(B) *Date of bank's honoring of check controls.*

(1) *Nicholson v. First Inv. Co.,* 705 F.2d 410, 413 (11th Cir.1983) ("Although in the non-bankruptcy context, a check honored in the regular course of business relates back to the date of delivery, see *Duke v. Sun Oil Co.,* 320 F.2d 853, 861 (5th Cir.1963), under the 'so far perfected' language of the Bankruptcy Act, the date of transfer is the date when the check is honored by the paying bank.")

(2) *Fitzpatrick v. Philco Finance Corp.,* 491 F.2d 1288, 1293 (7th Cir. 1974).

It is plain from this depiction of the appellate court decisions that the latest and the better-reasoned decisions, those which comport with business practice and the non-bankruptcy law which actually governs the customs of trade, are those which focus on the date of delivery. This court therefore believes itself bound by those decisions, if not by their better reasoning, then by the fact that they appear to represent the majority view. Accordingly, this court concludes that all of the prepetition transfers to Evergreen which are the subject of this

---

6. "The trustee may not avoid under this section a transfer ... to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor ... not secured by an otherwise unavoidable security interest; and ... on account of

which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor."

7. See the stipulation of facts filed on July 3, 1986, and October 8, 1986.

action were without the 90-day period except check no. 4217 in the sum of $40,000 which was initially dishonored and consequently was not honored by the bank until well within the 90-day period. As observed above, the governing line of authority expressly excepts from its rule checks which are dishonored.[8]

This court does not believe, however, that the fact that some of the delivered checks were postdated has any effect on the rule of *In re Kenitra, supra,* and the other "date-of-delivery" decisions. In all instances, the checks were honored within the ensuing 30-day period, in consonance with *Kenitra's* requirements and the postdating did not relate to the time of intended payment, but only to the time of presentment to the bank. And, under the bankruptcy law of § 547, payments by postdated checks are deemed to have been made when the check is delivered.[9]

The court, finally, is mindful that counsel for the debtor has, in its posttrial brief, impugned the integrity of the witness who testified that the checks in question were all received by Evergreen on July 15, 1983. They state that it is "questionable" wheth-er the witness Beelart was in a position to know personally of the receipt of the checks on July 15, 1983. But the witness purported to have personal knowledge, and so this is but another issue on which the court must judge the witness's credibility.[10] In this regard, the court finds the witness to be credible, because other facts—namely, other evidence that all checks were delivered on the same day and some were deposited on July 15, 1983 [11]—tend to corroborate Beelart's testimony. Further, as observed above, the debtor has *stipulated* that all checks in issue were delivered to Evergreen more than 90 days prior to bankruptcy.

*All the transfers to Evergreen and Airtech which were made within the 90-day period next preceding bankruptcy are transfers with respect to which the defense of § 547(c)(2) is available except for the $54,246.59 of check 4331 as to which work was completed on June 25, 1986 and June 17, 1986*

■ In applying the 90-day deadline, as noted above, the only check which was

---

**8.** Perhaps in view of the obliteration of the 45-day limit by the Bankruptcy Amendments and Federal Judgeship Act of 1984, however, some recent authority indicates that even this rule has been softened. See, e.g. *O'Neill v. Nestle Libbys P.R., Inc.,* 729 F.2d 35, 38 (1st Cir. 1984), holding the date of delivery to be the date of payment by check and refusing to hold that later dishonor has any effect on this principle. ("Because both check were dishonored ... we need not consider the effect of dishonor on the applicability of section 547(c)(2).") Cf. *In re Alchar Hardware Co., Inc.,* 764 F.2d 1530 (11th Cir.1985), holding delivery of a dishonored check to constitute "payment" within the meaning of a liquidated damages provision on a real estate contract.

**9.** In their post-trial briefs, the counsel for plaintiff alludes to state court cases and U.C.C. principles which characterize a postdated check as a credit transaction. But, under the general law, all checks are classified as credit transactions whether they are postdated or not. The provisions of § 547 are intended to recognize this, but to give the delivery of a check, so long as promptly paid, the significance of payment when it is delivered. See H.R. No. 95-595, 95th Cong., 1st Sess. 373-374 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6329, to the following effect: "Normally, a check is a credit transaction. However, for the purposes of this paragraph, a transfer involving a check is considered to be 'intended to be contemporaneous,' and if the check is presented for payment in the normal course of affairs, which the Uniform Commercial Code specifies as 30 days, U.C.C. section 3–503(2)(a), that will amount to a transfer that is 'in fact substantially contemporaneous.'" It seems thus to follow that, according to these principles, a postdated check constitutes payment on the date of delivery if the postdate is within 30 days of delivery and the check is honored within that 30-day period.

**10.** Plaintiff asserts that Beelart's official duties did not encompass that of actually making collections and that, therefore, he could not have had actual knowledge of the delivery of the checks. This does not, however, preclude the possibility that Beelart may have the personal knowledge of the collection of the six checks which are the subject matter of this action.

**11.** The vice-president of Global testified that the parties agreed to simultaneous delivery of the six checks. And one of the checks, # 4167, was, according to the evidence, deposited on July 15, 1983.

written to Evergreen which can conceivably qualify as a preferential transfer is check 4217 in the sum of $40,000. With respect to that check, however, according to the evidence which has been summarized for the court, the duty to pay arose as of the date the work was completed, July 18, 1983.[12] The date that the check was honored, after initially being dishonored, was August 17, 1983, fewer than 45 days later.[13] Thus, under either view of the law—whether the date of delivery is to be regarded as the date of payment for the purposes of the 45–day rule under § 547(c)(2) or whether the date of the honoring of the checks is the date of payment[14]—it appears that the requirements of the 45–day rule are squarely met. And, with respect to Evergreen, it appears that the parties have stipulated that the payments were made in the ordinary course of business.[15]

With respect to Airtech, with respect to check number 4331 in the sum of $60,000, the showing has been made that $10,832.42 of this payment was made on account of work completed on June 25, 1983. This was more than 45 days prior to the date on which the check was honored (after it had initially been dishonored), August 17, 1983. Otherwise, the evidence shows that $43,-816.17 was applied against work completed on June 17, 1983. Thus, the payment of August 17, 1983, would also not have been within the 45–day period.

As far as the other transactions with Airtech—represented in the main by check numbers 4409 ($85,000) and 5635 ($65,000)—the court has not been able to detect in the stipulation or evidence any date on which the duty to pay arose.[16] On this particular issue, it is the plaintiff's burden to demonstrate the date on which the obligation to pay arose.[17] This must be done by plaintiff as a matter of demonstrating the antecedency of the indebtedness.[18] And, having failed to do so, plaintiff must accept the court's granting judgment for the defendant Airtech on these two transfers.

Finally, in view of the foregoing considerations, this court deems plaintiff's contentions that defendant's payments to Airtech were not made in the ordinary course of business to be without merit as a matter of law.[19]

*Finally, the evidence shows that the defendant Airtech gave "subsequent value" within the meaning of § 547(c)(4) which is greater than the $54,246.50 with respect to which the § 547(c)(2) defense is unavailing and, alternatively, Evergreen and Airtech each gave more in "subsequent value" than plaintiff can contend to have been the value of any preferential transfers*

The defendants, in the course of the trial of these actions, submitted summaries of unpaid-for-transfers which would exceed the value of the $54,246.59 to Airtech which otherwise would qualify as a preferential transfer and otherwise would exceed any of the amounts with respect to which plaintiff could make a legitimate claim of preferential transfer. *Copies of those summaries are attached hereto and incorporated herein by reference.*

Therefore, for the foregoing reasons, it is hereby

---

12. See note 4, *supra.*

13. And see note 8, *supra.*

14. And see note 8, *supra.*

15. The parties have stipulated that, "[w]ith respect to 11 U.S.C. § 547(c)(2), each of the transfers was in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee within the meaning of 11 U.S.C. § 547(c)(2)(A)."

16. See p. 991, *supra.*

17. See, e.g., *Matter of Isis Foods, Inc.,* 38 B.R. 45 (Bkrtcy.W.D.Mo.1983).

18. See § 547(b)(2) of the Bankruptcy Code.

19. See note 15, *supra.*

ORDERED, ADJUDGED AND DE-CREED that the plaintiff's respective complaints for recovery of alleged preferential transfers be, and they are hereby, denied.

## DEFENDANT'S EXHIBIT 101

### GLOBAL v. AIRTECH SERVICE, INC.

#### § 547(c)(2) Defense

(1) Check 4331 for $60,000 received from Global on 08/05/83, and is designated "V". (Ex. 1)

(2) Airtech applies "V" as follows (Ex. 1);

$10,830.42 to 6–348
$49,169.58 to 6–152

(3) August 5, 1983 less 45 days is June 21, 1983.

(4) Airtech Invoice 6–348 reflects last work performed on 06/25/83, the 41st day before payment (Ex. 4)

(5) Airtech Invoice 6–152 is dated June 25, 1983; shows last work performed on 06/17/83; shows Work Order No. B02951; and shows Materials included in total amounted to $43,416.17. (Ex. 5)

(6) Airtech Stores Requisitions and Vendor Invoices for Work Order B02951 reflect that invoices from ARC Distributing, Inc. and International Air Leases, Inc. not received until 06/22/83, which then allowed 6–152 to be billed. (Ex. 8)

(7) Thus, Airtech could not have billed invoice until 06/22/83, the 44th day prior to receipt of the check.

## DEFENDANT'S EXHIBIT 102

### GLOBAL v. AIRTECH SERVICE, INC.

#### § 547(c)(4) Defense

| Check | Invoice | Date | Date | Amount | Preference Balance |
|---|---|---|---|---|---|
| 4331 | | 8/05 | | $60,000.00 | $60,000.00 or $0.00 |
| | 8–108 | 8/23 | 8/05 | 456.96 [1] | |
| | 8–254 | 8/31 | 8/08 | 198.45 | |
| | 8–256 | 8/31 | 8/08 | 61.01 | |
| Subtotal as of 08/08/83 | | | | $ 716.42 | $59,283.48 or (716.42) |
| 4409 | | 8/09 | | $85,000.00 | $144,283.58 or 85,000 |
| | 8–087 | 8/23 | 8/12 | $23,801.79 [2] | |
| | 8–088 | 8/21 | 8/12 | 8,165.15 | |
| | 8–099 | 8/25 | 8/12 | 79,417.83 | |
| | 8–139 | 8/23 | 8/13 | 4,725.00 | |
| | 8–140 | 8/23 | 8/13 | 1,995.00 | |
| | 8–142 | 8/21 | 8/14 | 1.73 | |
| | 8–147 | 8/23 | 8/14 | 138.60 | |
| | 8–188 | 8/25 | 8/12 | 439.36 | |
| | 8–189 | 8/25 | 8/15 | 31.76 | |
| | 9–286 | 9/28 | 8/13 | 1,522.50 | |
| | 9–287 | 9/28 | 8/13 | 1,995.00 | |
| Subtotal as of 08/14/83 | | | | $122,233.71 | $ 22,049.86 or (37,233.71) |

1. See Invoices in Exhibit 6.
2. See Invoices in Exhibits 6 and 7.