**In re CIMMARON OIL COMPANY, INC., Plaintiff,**

v.

**SCHLUMBERGER WELL SERVICES, INC., Defendant.**

**No. CA 3–86–1623–R.**

United States District Court, N.D. Texas, Dallas Division.

Jan. 8, 1987.

As Revised July 25, 1988.

---

Herbert J. Gilles, Palmer, Palmer & Coffee, Dallas, Tex., for plaintiff.

William E. Swart, Ruth Abboud Cross, Arter, Hadden & Witts, Dallas, Tex., for defendant.

## MEMORANDUM OPINION

BUCHMEYER, District Judge.

This bankruptcy appeal presents one issue: whether—for purposes of setting aside preferential transfers made within 90 days of the filing of bankruptcy, 11 U.S.C. § 547(b)—a payment made by check takes place (i) when the check is delivered to the creditor, or (ii) when the check is actually honored by the bank on which it is drawn.

This opinion holds that, under 11 U.S.C. § 547(b), a payment made by check does not occur until that check is actually presented to and honored by the drawee bank.

### 1. *The Facts*

Cimmaron Oil Co., Inc. ("Cimmaron") filed a voluntary petition for relief under Chapter 11 on July 10, 1981.

On April 10, 1981, Cimmaron had delivered a check in the amount of $30,092.52 to Schlumberger Well Services ("Schlumberger"); this check was presented to Cimmaron's bank on April 17, 1981, and was paid on that date. On April 22, 1981, Cimmaron had delivered a $21,585.79 check to Schlum-

berger, and this check was honored by Cimmaron's bank on April 27, 1981.

In the bankruptcy proceedings, Cimmaron claimed that both payments—which totalled $51,678.31—should be set aside as preferences under § 547(b).[1] In response, Schlumberger argued that:

(1) the evidence did not establish that Cimmaron was insolvent when either payment was made;

(2) the check for $30,092.52 was delivered to it on April 10, 1981, so the payment of that amount did not take place within 90 days of the filing for bankruptcy.

The bankruptcy court ruled against Schlumberger on both points—thereby voiding the $51,678.31 as preferential payments under § 547(b)—and this appeal resulted.

### 2. *The Law*

In Texas, the delivery of a check does not give the payee any vested interest in the funds held by the bank on which the check is drawn. Tex.Bus. & Comm.Code Ann. art. 3.409 (Vernon Supp.1984–85). Accordingly, *In re Quality Holstein Leasing, Inc.*, 46 B.R. 70, 72 (Bkrtcy.N.D.Tex.1985), holds that "payment by check does not occur until the check is honored by the drawee bank."[2] *Quality Holstein* also emphasizes that:

"Since the funds in the drawee bank could have been garnished by a creditor on a simple contract prior to the honoring of the check by the bank on March 20, 1981, the transfer was not complete for preference purposes until that date. *Fitzpatrick v. Philco Finance Corp.*, 491 F.2d 1288, 1293 (7th Cir.1974); *In re Duffy*, 3 B.R. 263, 265 (Bankr.S.D.N.Y. 1980); *Klein v. Tabatchnick*, 610 F.2d 1043, 1049 (2nd Cir.1979); *In re Super*

---

**1.** Under 11 U.S.C. § 547(b), the debtor must establish that the transfer was (a) for the benefit of a creditor, (b) on account of an antecedent debt, (c) made while the debtor was insolvent, (d) made within 90 days of filing for bankruptcy and (e) allowed the creditor to receive a greater recovery than would have been received had the transfer not been made and had a bankruptcy

liquidation occurred. 4 Collier, *Bankruptcy* § 547.01 (15 ed. 1986).

**2.** See also *In re Matter of Advanced Glove Mfg. Co.*, 25 B.R. 521, 524–525 (Bkrtcy.E.D.Mich. 1982); *In re Navdain, Inc.*, 32 B.R. 875, 878 (Bkrtcy.E.D.Penn.1983); *In re Morton Shoe Companies, Inc.*, 36 B.R. 14 (Bkrtcy.D.Mass. 1983).

*Market Distributors Corp.*, 25 B.R. 63, 64–65 (Bankr.D.Mass.1982).

In contrast, *Shamrock Gulf Co. v. Rich-craft, Inc.*, 680 F.2d 645 (9th Cir., 1982) does hold that the date of delivery of a check is the date on which payment is complete.[3]

Schlumberger also argues that Cimmaron was not insolvent when the $51,678.31 was paid. However, under 11 U.S.C. § 547(f), a debtor is *presumed* to be insolvent during the 90 days-period immediately preceding the date the bankruptcy petition is filed. Schlumberger's only attempt to rebut this presumption is its contention that the testimony of Gary P. Olson, who became President of Cimmaron in September 1981—that Cimmaron was insolvent at the time of the payments to Schlumberger—was "inconsistent" and used book value of Cimmaron's assets, an "incompetent measure of solvency." This contention is without merit because the bankruptcy court simply found the Cimmaron witness to be credible—and because the bankruptcy court's fact findings (that Cimmaron was insolvent in April of 1981) are not "clearly erroneous." *In the Matter of Emerald Oil*, 695 F.2d 833 (5th Cir.1983); Fed.R.Civ. P. 52(a); Bankr.Rule 8013.

For these reasons, the bankruptcy court correctly found that the $51,678.31 payments to Schlumberger were preferences, and should be set aside, under § 547(b). Accordingly, the findings and conclusions and judgment of the Bankruptcy Court are AFFIRMED.

---

**3.** It is also undisputed that, with respect to the $21,585.91, both the delivery of it (April 22, 1981) and the payment by Cimmaron's bank (April 27, 1981) took place within 90 days from the date of filing of bankruptcy (July 10, 1981).