**In re AMWC, INC., dba American Wholesale Club, Debtor.**

**AMWC, INC., dba American Wholesale Club, Plaintiff,**

**v.**

**GENERAL ELECTRIC, et al., Defendants.**

**Bankruptcy No. 388–33711 RCM–11. Adv. No. 388–3487.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

Dec. 20, 1988.

Keith A. Langley, Dallas, Tex., for plaintiff.

S. Barcus Hunter, Ft. Worth, Tex., for defendants.

## MEMORANDUM OPINION

ROBERT McGUIRE, Chief Judge.

This matter comes before the Court on briefs in an adversary proceeding filed to

recover a payment made by debtor AMWC, Inc. d/b/a American Wholesale Club ("AMWC") to defendant General Electric Major Appliance ("GE") as preferential pursuant to 11 U.S.C. § 547. This Court has jurisdiction over the controversy pursuant to 28 U.S.C. § 157(b)(2)(F) as a core proceeding. The following constitute the Court's findings of fact and conclusions of law as required by Bankruptcy Rule 7052.

On March 21, 1988, AMWC delivered its Check No. 60226 in the amount of $10,261 payable to GE on an antecedent debt. The check was honored on March 30, 1988. This debtor filed its Voluntary Petition for Relief under Chapter 11 of the Bankruptcy on June 21, 1988. Consequently AMWC's check was delivered 92 days pre-petition but was not honored until 83 days before the bankruptcy filing. Since a payment can be avoided if made within the 90 days preceeding the filing of the bankruptcy petition under section 547(b)(4)(A), the issue facing the Court involves whether a transfer occurred on the payment date or the delivery date of the check. The parties stipulated that this was the sole issue for the Court to decide.

As pointed out in Lurey, *Preferences* in 9th Annual Bankruptcy Litigation Institute 423–426 (1988) (*"Lurey"*), the courts are split as to the method of determining whether a payment by check occurred within the preference period. *Lurey* expresses the opinion that the majority of Bankruptcy Courts addressing the issue have held generally that the date of acceptance by the drawee, rather than the date of receipt of the check by the creditor is controlling. For the same opinion, see Note, *'Transfers by Check': The 90–Day Rule of Preference Recovery Under Section 547(b) of the Bankruptcy Code*, 1987, Duke L.J. 712, 723 ("Duke L.J.") Some of the more recent cases so holding are: *In re Sun-up/Sundown, Inc.*, 65 B.R. 696 (Bankr.S. D.Fla.1986); *Matter of Georgia Steel, Inc.*, 56 B.R. 509 (Bankr.M.D.Ga.1985), *rev'd on other grounds*, 66 B.R. 932 (M.D.Ga.1986);

*Sweetapple Plastics, Inc. v. Philup Shuman & Sons, Inc.*, 77 B.R. 304, 308, 310 (Bankr.M.D.Ga.1987); *In re W & T Enterprises, Inc.*, 84 B.R. 838 (M.D.Fla.1988); *Cimmarron Oil Co. v. Schlumberger Well Services, Inc.*, 88 B.R. 103 (N.D.Tex.1987). *Also see, Nicholson v. First Investment Co.*, 705 F.2d 410, 412–13 (11th Cir.1983) and *Fitzpatrick v. Philco Finance Corp.*, 491 F.2d 1288 (7th Cir.1974), both of which were decided under the former Bankruptcy Act.

The Ninth Circuit has held that the date of transfer is the date of delivery of the check. *In re Wolf & Vine, Inc.*, 825 F.2d 197, 200–02 (9th Cir.1987); *In re Kenitra, Inc.*, 797 F.2d 790, 791 (9th Cir.1986), *cert. denied subnom Robert K. Morrow, Inc. v. Agri–Boef Co.*, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 980 (1987). To the same effect, *also see, In re Amarex, Inc.*, 74 B.R. 378 (Bankr.W.D.Mo.1987), *aff'd*, 88 B.R. 362 (W.D.Okla.1988); *In the Matter of Global Airways International Corp.*, 80 B.R. 990 (Bankr.W.D.Mo.1987); *In re FHL, Inc.*, 91 B.R. 288 (Bankr.D.N.J.1988) (The court expresses the opinion that now the majority of circuits favor the delivery rather than the honor date); *In re White River Corp.*, 799 F.2d 631 (10th Cir.1986) (a § 547(c)(2) case).

*Lurey*, points out that a third rule applied by a number of courts concludes, if a check is honored within ten days after it is delivered to the creditor, the transfer is deemed made when the check is delivered, and that if the check is mailed, then the date of mailing is the date of delivery. *See, Lurey, supra*, at 425. *In re Sider Ventures & Services Corp.*, 47 B.R. 406, 407 (S.D.N.Y.1985) [1] *In re Advance Industries, Inc.*, 63 B.R. 677 (Bankr.N.D.Iowa 1986); *In re Blanton Smith Corp.*, 37 B.R. 303, 308–09 (Bankr.M.D.Tenn.1984). Courts applying this theory base their decisions on § 547(e)(2)(A), which provides that a transfer is considered made at the time it takes effect if the transfer is perfected

---

**1.** The Bankruptcy Court opinion in *Sider,* found at 33 B.R. 708, (Bankr.S.D.N.Y.1983) expresses the opinion that the Circuit decisions of *Nicholson* and *Fitzpatrick* do not have precedential value in construing plainly different provisions of the Bankruptcy Code. *See, Sider,* 33 B.R. at 711.

within ten days. *But see, In re Walker Industrial Auctioneers, Inc.*, 45 B.R. 452, 455 (Bankr.D.Ore.1984) and *In re Insulation Materials, Inc.*, 47 B.R. 832 (Bankr.E. D.Tenn.1985). *See also,* Note, *Timing of Payments by Check Under § 547 of the Bankruptcy Code,* 7 Cardoza L.R. 887 (1986) ("*Timing of Payments by Check*"); Ellis, *Preferential Payments by Check: At What Point is Payment Made?,* 16 UCC L.J. 46 (1983); *See,* Duke L.J., *supra,* at 712.

What constitutes a "transfer" under § 547(b) and when it is complete is a federal question since it arises under a federal statute designed to have uniform application. *McKenzie v. Irving Trust Co.,* 323 U.S. 365, 370, 65 S.Ct. 405, 408, 89 L.Ed. 305, 309 (1945); *In re Nucorp Energy, Inc.,* 92 B.R. 416 (9th Cir. BAP 1988). The *McKenzie* court went on to state:

In the absence of any controlling federal statute, a creditor or bona fide purchaser could acquire rights in the property transferred by the debtor, only by virtue of a state law. And hence § 60a's 'apparent command is to test the effectiveness of a transfer, as against the trustee, by the standards which applicable state law would enforce against a good faith purchaser.' ... thus adopts state law as the rule of decision. The state standards which control the effectiveness of a transfer likewise determine the precise time when a transfer is deemed to have been made or perfected.

*McKenzie,* 323 U.S. at 370, 65 S.Ct. at 408, 89 L.Ed. at 309.

Transfer is defined in the Bankruptcy Code as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary of disposing of or parting with property ..." 11 U.S.C. § 101(50). As a bankruptcy court in Minnesota noted "the key words in this definition are *disposing of or parting with property.*" (Emphasis added.) *In re Ramy Seed Co.,* 57 B.R. 425, 429 (Bankr.D.Minn.1985).[2] The Court must determine whether the delivery of a check,

as opposed to honoring of the check, is an actual "parting with property".

The U.C.C. provides

[a] check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it.

Tex. Bus. Comm.Code § 3. 409(a) (Vernon 1968) (Tex. U.C.C.). An examination of the legislative history of the enactment of the Bankruptcy Code reveals that one purpose in revising the Bankruptcy Act was the adoption of the U.C.C. in nearly all jurisdictions. H.R.Rep. No. 595, 95th Cong., 1st Sess., *reprinted in* 5 U.S.Code Cong. & Admin.News 1978 at 5787, 5966. ("House Report") The UCC used some of the same terms as the old Bankruptcy Act but gave the terms new meanings. As the Code legislative history states, "[i]ts time to bring the two statutes into harmony." *Id.* at 6139. The Duke L.J. states:

The UCC provides that a check does not itself operate as an assignment of funds. Furthermore, the UCC states that the obligation for which the check is given is not discharged until it is presented and accepted by the bank. Thus, under accepted commercial practice, a transfer by check is not completed until the check is *honored* by the bank. In itself, this suggests that for the purpose of section 547(b) the date of honor should be used. *Any deviation from the accepted practice in commercial law as codified by the UCC should be explicitly expressed by Congress or supported by compelling policy.*

Those in favor of using the date of delivery as the date of transfer sometimes argue that commercial law supports using the delivery date because 'in the commercial world receipt of a check, as distinguished from the date of payment of an obligation.' In reality, this argument provides only illusory support for using the delivery date as the date of transfer. The UCC explicitly states that the obligation for which a check is given

---

**2.** The *Ramy* court also provides a list of cases holding the honor date of the check is the pivot-

al date for § 547(b)(4)(A) purposes. *See, Ramy,* 57 B.R. at 429.

is not discharged until it is presented and accepted by the bank. Whether or not receipt of a check is customarily looked upon as the date of payment, custom has been replaced by statute. *Indeed, commercial law and pragmatic concerns of protecting the integrity of the bankruptcy process support the argument that the date of honor should constitute a transfer under section 547(b)....*

Duke L.J., *supra*, at 717–18. (Emphasis supplied).

Some commentators have concluded that a delivery of a check does not equal a transfer of funds. Bienenstock, *Bankruptcy Reorganization* 392, n. 113 (1987). Bienenstock says "in the case of checks, there is no transfer until the bank honors the check." *Id.*[3] White and Summers, in their classic treatise on the UCC, state that a check is not an assignment of funds but "merely represents the customer's order upon his bank to pay a certain sum ..." White & Summers, *Uniform Commercial Code* § 17–7 at 692 (2d ed. 1980). Courts have supported this view. *In the Matter of Fasano/Harriss Pie Co.*, 43 B.R. 871, 873–74 (Bankr.W.D.Mich.1984) *aff'd* 71 B.R. 287 (W.D.Mich.1987). The Court stated that "a check simply presents an order to the drawee bank to make payment and does not rest in the payee any title to or interest in the funds of the drawee bank until the check is honored". White and Summers also note circumstances that could happen to funds in an account between the time a check is issued and the time it is presented for payment such as garnishment or a customer's stop payment order. *Id.* The courts holding that delivery by check is a transfer account for these circumstances by holding that the delivery date is the critical date only if the check is honored within the statutory period. *In re*

*Wolf & Vine*, 825 F.2d 197, 202 (9th Cir. 1987).

The majority of recent Circuit courts have held that the check delivery date controls for purposes of the ordinary course of business exception. *In re Continental Commodities*, 841 F.2d 527 (4th Cir.1988); *In re Wolf & Vine*, 825 F.2d 197 (9th Cir.1987); *In re White River*, 799 F.2d 631 (10th Cir.1986); See also *O'Neill v. Nestle Libbys PR Inc.*, 729 F.2d 35 (1st Cir.1984); *Shamrock Golf Co. v. Richcraft, Inc.*, 680 F.2d 645 (9th Cir.1982).

In light of the more recent circuit cases on § 547(c)(2), it is appropriate to reexamine the § 547(b)(4)(A) issue. In this case a determination of the transfer date for the preference period (§ 547(b)(4)(A)), and not the ordinary course of business exception (§ 547(c)) is at issue. Commentators recognize that the provisions were enacted for different policy reasons. See, *Timing of Payments by Check, supra,* at 888. Such article concludes that payments made by check in the context of § 547(b)(4)(A) should be deemed to occur when the check is honored, whereas for § 547(c) purposes, the ordinary course of business exception, payment should be deemed to occur when the check is delivered, not when it is honored. *Id.* at 888. The author states, "[t]he different timing rules are necessary because the two Code sections advance very different policy concerns". *Id.*[4] The ordinary course of business exception was enacted to "leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy." House Report, *supra,* at 5787, 6328. The general preference section was enacted to insure that equality of distribution between the

---

3. Bienenstock also provides an example of a similar situation to the case at bar. "To illustrate, assume that a supplier sells 1000 widgets to a debtor and upon delivery of the widgets obtains an uncertified check from the debtor for the full price. Is the receipt of the check a preference? No. Reason: the first ingredient of a preference is missing. There has been no

transfer of an interest in the debtor's property." Bienenstock, *supra,* at 389.

4. However, the author, in n. 6, states: "But see Ellis, *Preferential Payments by Check: At What Point is Payment Made?*, 16 U.C.C.L.J. 46, 57 (1983) (addressing the issue of timing of payments made by check, and arguing that requiring two different timing rules is illogical)."

various creditors and to discourage the race to the courthouse. *Id.* at 6138.

The different policy factors led the Ninth Circuit Bankruptcy Appellate Panel to opine *in dicta,* with a qualifying concurring opinion dissenting on this issue, that cause exists for distinguishing the two provisions and establishing different dates for both. *In re Nucorp Energy, Inc.,* 92 B.R. 416 (9th Cir. BAP 1988) The BAP noted that while the transfer on delivery rule furthers the policies behind the ordinary course of business exception because it encourages merchants to extend new credit to financially troubled businesses, this rationale simply does not apply to the general preference section. The majority opinion states that a transfer on delivery rule for the purposes of section 547(b)(4)(A) would not encourage merchants to deal with an insolvent, or financially depressed entity. Also, the BAP noted that date of honor provides a more accurate calculation[5] because delivery date rule could cause confusion if the check was post-dated or if the delivery was made to a third party rather than the creditor. The BAP *dicta* concluded that the transfer on the date of delivery is appropriate for the ordinary course of business exception while the transfer for the purposes of section 547(b)(4)(A) occurs when the bank honors the check. In *Matter of Fasano/Harriss Pie Co.,* 43 B.R. at 871, the court held that, though the acceptance and honor of a check by a payee bank is the "transfer" contemplated by § 547(b)(4), the date of the delivery of the check to the debtor is the "transfer" contemplated for the purpose of the exceptions under § 547(c)(1), (2), and (4). Congress did not necessarily contemplate a unitary concept of transfer for all parts of § 547. *In re Gold Coast Seed Co.,* 30 B.R. 551, 553 (BAP 9th Cir.1983). The Duke L.J. article discusses the differing policy concerns of § 547(b) and (c), and concludes that such policy considerations do justify differing determinations as to the date of transfer. *See,* Duke L.J., *supra,* at 724. Sections 547(c)(1) and (c)(2) *benefit the debtor* and " 'are designed to encourage creditors to deal with a failing business and to protect ordinary business transactions' " in order to prevent the debtor's slide into bankruptcy.

...Thus, under section 547(c), 'Congress intended to create an *exception* to the general rule that a check is not a transfer until it is honored by the drawee bank.'

Section 547(b) is far more concerned with the welfare of *creditors.* It addresses the depletion of the debtor's estate in order to avoid transactions to favored creditors. To be avoidable, a preferential transfer must occur in a credit transaction; transfers must be in payment of an already existing debt and such transfer must deplete the bankruptcy estate. No policy is promoted by treating a transfer as cash for purposes of avoiding transfers to favored creditors. Unlike section 547(c), no justification exists for deviating from accepted commercial practice or for deviating from the general rule that a check is not a transfer until it is honored. Nor has Congress explicitly expressed any intention of creating an exception or deviation for section 547(b). Thus, the date of honoring a check should remain the date that the transfer took place.

Duke L.J. at 724 and 725. (Footnotes omitted).

Under the majority of recent Circuit authority, the approved date for purposes' of § 547(c), the ordinary course of business exception is the date of delivery of the check. However, this Court does not need to reach that issue.

---

5. The BAP stated that the applicability of both § 547(b), ninety-day preference period, and § 547(c)(2), within forty-five days of debt exception [the forty-five day limitation has been repealed] depends entirely on the date the transfer is deemed to have taken place. The BAP opines that using a delivery date for those two purposes would allow more room for manipulation. *See, In re Quality Holstein Leasing, Inc.,* 46 B.R. 70 (Bankr.N.D.Tex.1985), which was this Court's prior opinion on the forty-five day § 547(c)(2) exception, holding that, for purposes of that exception, the honor date was the appropriate date. Recent Circuit authority on the § 547(c)(2) forty-five day ordinary course exception would be contrary to the *Quality Holstein* holding on the remaining § 547(c)(2) issues.

Finally, GE argues that section 547(e)(1)(B) applies to this transaction. This section provides "a transfer of a fixture or property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee." Under GE's view, the transfer became perfected when the check was honored. Further under section 547(e)(2)(A), if perfection takes place within 10 days after the transfer takes effect then the transfer is considered made at the time the transfer takes effect. GE argues, since the transfer took effect when the check was delivered, and the check was honored and thus, perfected within ten days after delivery, then the transfer is considered made at the date of delivery. This theory provides further support for its conclusion that for purposes of the general preference section transfers occur upon delivery. Collier's states that this section "only deals with security interests and should not be used to determine when a payment by check is deemed to have been made." 4 *Collier's on Bankruptcy* § 547.16 at 547–67 (15th ed. 1988). Also, the First Circuit has also supported this view. See, *O'Neill v. Nestle Libbys PR, Inc.*, 729 F.2d 35, 37 (1st Cir.1984). *See also, In re Insulation Materials, Inc.*, 47 B.R. at 834, where Judge Bare concludes that even if § 547(e)(2)(A) applies, transfer by check takes effect between the transferror and transferee, not upon delivery, but upon honor, and, therefore, § 547(e)(2) is irrelevant.

The Court holds that the transfer to GE from AMWC was effective on the date the bank honored the check. Since the check was honored 83 days before the bankruptcy filing, the payment constitutes a preferential transfer within the meaning of § 547. Defendant GE will be held liable to AMWC in the amount of $10,261.