**ALLIED COLOR CORPORATION,**
**Plaintiff,**

v.

**MANUFACTURERS HANOVER TRUST COMPANY, Defendant.**

**No. 79 Civ. 4707.**

United States District Court,
S. D. New York.

Feb. 27, 1980.

---

Brotman & Dolin, New York City, for plaintiff; Lester Dolin, New York City, of counsel.

Robert M. Rosenblith, New York City, for defendant.

LASKER, District Judge.

Allied Color Corporation, the payee named in two checks drawn on Manufacturers Hanover Trust Company in an aggregate amount of $24,020., sues to recover that amount. Manufacturers moves to dismiss the complaint under Rule 12(b)(6).

The two checks were issued to Allied on December 14, 1978, but postdated December 31, 1978. Allied deposited the checks to its account on December 15, 1978, at its bank in Connecticut, and on December 18, 1978

Manufacturers received them and stamped them "paid." On December 28th, Manufacturers cancelled its "paid" stamp and returned the checks unpaid.

Allied asserts that it is entitled to recover the amount of the checks because Manufacturers wrongfully revoked final payment of the checks, see N.Y.U.C.C. § 4–213, because it failed to send timely notice of dishonor, see id. § 3–508(2), and because it handled the checks negligently, see id. § 4–103. The present motion, however, addresses only Allied's final contention which is that it is entitled to recover from the bank under provisions of the federal banking regulations and the Uniform Commercial Code which provide, respectively:

"A paying bank becomes accountable for the amount of each cash item received by it from or through a Federal Reserve Bank at the close of the paying bank's banking day on which the cash item was so received if it retains such item after the close of such banking day, unless prior to such time, it pays or remits for the item as herein provided."

12 C.F.R. § 210.9(a)(1) (1979), and:

"In the absence of a valid defense . . . if an item is presented on and received by a payor bank the bank is accountable for the amount of

(a) a demand item other than a documentary draft whether properly payable or not if the bank, in any case where it is not also the depository bank, retains the item beyond midnight of the banking day of receipt without settling for it or, regardless of whether it is also the depository bank, does not pay or return the item or send notice of dishonor until after its midnight deadline . . . ."

N.Y.U.C.C. § 4–302(a). The bank moves to dismiss on the grounds that these two provisions are inapplicable because the postdated checks which Allied sues on are not "cash items" as that term is used in 12 C.F.R. § 210.9(a)(1), or "demand items" within the meaning of N.Y.U.C.C. § 4–302(a).

### 1. Federal Banking Regulations

■ Manufacturers' contention that a postdated check presented to a bank for payment prior to the stated date is not a "cash item" is correct. A "cash item" is defined as:

"(1) Any check other than a check classified as a noncash item in accordance with paragraph (j) of this section; or

"(2) Any other item payable on demand and collectible at par which the Federal Reserve bank of the district in which the item is payable may be willing to accept as a cash item."

12 C.F.R. § 210.2(i). However, a postdated check prior to date is not a "check" as that term is used in subsection (1) of section 210.2(i), since for these purposes a "check" is "any draft drawn on a bank and payable on demand," 12 C.F.R. § 210.2(b), and a postdated check is not, until the stated date, "payable on demand." For the same reason, such a check could never qualify as a "cash item" under subsection (2) of section 210.2(i), which is limited on its fact to items "payable on demand."

### 2. The Uniform Commercial Code

Although no cases appear to have addressed the issue, a postdated check submitted to a bank for payment prior to date appears to be a "demand item" within the meaning of section 4–302(a) of the Uniform Commercial Code.

■ It is clear that a postdated check is not, prior to date, a "check" as defined in N.Y.U.C.C. § 3–104(2)(b), since it is not "payable on demand," but rather a "draft" as defined in id. § 3–104(2)(a). Further, such a check is clearly an "item" as defined in section 4–104(1)(g), which states that " '[i]tem' means any instrument for the payment of money even though it is not negotiable but does not include money."

A "demand item," however, is nowhere defined in the Uniform Commercial Code. The bank argues, without citation of any authority, that "demand items" comprise only items "payable on demand." Allied contends, on the contrary, that the class of "demand items" is broader than the class of items "payable on demand," and includes prematurely presented postdated checks. At least two provisions of the U.C.C. provide some support for Allied's views. Section 3–114(2) provides:

"Where an instrument is antedated or postdated the time when it is payable is determined by the stated date if the instrument is payable on demand or at a fixed period after date."

This provision appears to contemplate the existence of instruments "payable on demand" that are in fact not payable on demand until after a future date. Such instruments might well be termed "demand instruments," and would include postdated checks. Similarly, U.C.C. § 3–122(1) provides:

"A cause of action against a maker or acceptor accrues

(a) . . . ;

(b) in the case of a demand instrument upon its date or, if no date is stated, on the date of issue."

This passage also seems to contemplate the existence of "demand instruments" which include instruments that do not become "payable on demand" until after a specified date sometime after the date of issue.

■ Two further propositions suggest that the plaintiff's view of the matter is correct. First, it would be reasonable for the Code to use the language "an item payable on demand" if that is what is meant, rather than the phrase "a demand item." In an area of the law replete with terms of art, the failure to use such a term is not likely to be inadvertent. Second, there is no apparent reason why postdated checks should be treated differently than any other checks for the purposes of section 4–302. The import of that provision is, in essence, that when a bank receives a check it must act with respect to that check immediately, either by forwarding it to another bank, settling for it, paying it, returning it, or sending notice of dishonor. Otherwise, the bank is deemed to have accepted the check, and must pay. If a bank determines not to pay a check because there are

not sufficient funds in the account, or because the owner of the account has stopped payment, it is required to notify the payee before its "midnight deadline" (midnight of the banking day following receipt of the check, N.Y.U.C.C. § 4–104(1)(h)). It makes sense that the same rule should apply when the bank determines not to pay a check because it is postdated and therefore not yet properly payable. Surely, such a rule adds only a minor burden to the banks' handling of checks.

For the reasons stated, we conclude that while the complaint fails to state a claim under 12 C.F.R. § 210.9, it does state a claim under N.Y.U.C.C. § 4–302. To the extent that it asserts a claim under the former provision, it is dismissed. The motion to dismiss is otherwise denied.

It is so ordered.