**QUINN WHOLESALE, INC.,**
**Plaintiff/Appellant,**

v.

**John A. NORTHEN, Trustee in Bankruptcy for Gordon Foods, Inc., Defendant/Appellee.**

Civ. No. C–88–302–G.
Bankruptcy No. B–86–02467C–7.

United States District Court,
M.D. North Carolina,
Greensboro Division.

Aug. 23, 1988.

272

Michael E. Weddington, Amos U. Priester, IV, Raleigh, N.C., for Quinn Wholesale, Inc.

Charles T.L. Anderson, Chapel Hill, N.C., for Northen.

## MEMORANDUM OPINION

BULLOCK, District Judge.

Quinn Wholesale, Inc. ("Quinn") takes this appeal from a judgment of the bankruptcy court requiring Quinn to return a payment received from Gordon Foods, Inc. ("Debtor") to the Trustee in Bankruptcy for Gordon Foods. The bankruptcy court found the payment to Quinn to be a post-petition transfer for a pre-petition debt, avoidable by the Trustee under 11 U.S.C. § 549. For the reasons discussed below, the court finds that the transfer was made before the bankruptcy petition was filed, and therefore reverses the bankruptcy court's decision.

### Statement of the Case

Debtor owned and operated grocery stores under the retail name "Piggly Wiggly" in and around Sanford, North Carolina. Quinn supplied grocery inventory to Debtor on a weekly basis. On December 4, 1986, Quinn delivered an order of inventory to Debtor and at the same time received a check in the amount of $72,444.62 payable to Quinn Wholesale, Inc., and drawn on the Debtor's account with Branch Banking & Trust Co. That amount represented the cost of the previous week's shipment. Branch Banking & Trust honored the check on December 9, 1986.

On December 5, 1986, before the check had been honored, Debtor filed a voluntary petition in bankruptcy under Chapter 11 of the Bankruptcy Code of 1978 (the "Code"). On March 9, 1987, Debtor's bankruptcy petition was converted from a Chapter 11 reorganization to a Chapter 7 liquidation and appellee John Northen was appointed as Trustee in Bankruptcy for Gordon Foods, Inc. Northen then brought this action in bankruptcy court seeking to set aside the payment to Quinn as an unauthorized post-petition payment of a pre-petition debt, which is avoidable under 11 U.S.C. § 549. Quinn argued unsuccessfully to the bankruptcy court that the transfer occurred at the time Debtor tendered the check to Quinn, rather than when the bank honored it. Therefore, the transfer was pre-petition, and Section 549 does not apply.[1] The bankruptcy court disagreed, saying that the weight of authority supported a finding that a payment by check is not considered a transfer until the check is honored. Since the check was honored four days after Debtor filed its bankruptcy petition, the payment was an avoidable post-petition transfer. Thus the sole issue on appeal is the legal question of when a transfer is deemed to occur under the Bankruptcy Code for payments made by check.

---

1. 11 U.S.C. § 549 (Supp.1988) provides in pertinent part:

(a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—(1) that occurs after the commencement of the case; and (2) ... (B) that is not authorized under this title or by the court.

(b) In an involuntary case, a transfer made after the commencement of such case but before the order for relief to the extent any value, including services, but not including satisfaction or securing of a debt that arose before the commencement of the case, is given after the commencement of the case in exchange for such transfer, notwithstanding any notice or knowledge of the case that the transferee has.

(c) The trustee may not avoid under subsection (a) of this section a transfer of real property to a good faith purchaser without knowledge of the commencement of the case and for present fair equivalent value unless a copy or notice of the petition was filed, where a transfer of such real property may be recorded to perfect such transfer, before such transfer is so perfected that a bona fide purchaser of such property, against whom applicable law permits such transfer to be perfected, could not acquire an interest that is superior to the interest of such good faith purchaser. A good faith purchaser without knowledge of the commencement of the case and for less than present fair equivalent value has a lien on the property transferred to the extent of any present value given, unless a copy or notice of the petition was so filed before such transfer was so perfected.

## DISCUSSION

This court has jurisdiction to hear appeals from final orders of the bankruptcy court under 28 U.S.C. § 158. Although the bankruptcy court's factual findings should not be disturbed unless clearly erroneous, Bankr.R. 8013, *Willemain v. Kivitz*, 764 F.2d 1019, 1022 (4th Cir.1985), its legal conclusions are subject to *de novo* review. *In the Matter of Bufkin Bros., Inc.*, 757 F.2d 1573, 1577–78 (5th Cir.1985); *see also Caswell v. Lang*, 757 F.2d 608, 609 (4th Cir.1985).

11 U.S.C. § 101(50) (Supp.1988) defines a "transfer" very broadly as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property." This language does not speak directly to whether the interest represented by a check is sufficient to render delivery of a check a "transfer" under the Code.

The bankruptcy court followed decisions of other courts and looked to state law to determine the interests involved. As had the courts in both *Matter of Isis Foods, Inc.*, 37 B.R. 334, 336 (W.D.Mo.1984), and *Matter of Bridges Enterprises, Inc.*, 44 B.R. 979, 982 (Bankr.S.D.Ohio 1984), the bankruptcy court relied on the language of Uniform Commercial Code § 3–409, as adopted by state statute. North Carolina General Statute § 25-3-409 states that "[a] check or other draft does not of itself operate as an assignment of any funds in the hands of the drawee available for its payment, and the drawee is not liable on the instrument until he accepts it." The bankruptcy court found that this statutory embodiment of common law negotiable instruments law is applicable to the bankruptcy context. The bankruptcy court also cited two older North Carolina cases, *Perry v. Bank of Smithfield*, 131 N.C. 117, 42 S.E. 551 (1902), and *In re Will of Winborne*, 231 N.C. 463, 57 S.E.2d 795 (1950), as further support for the position that title to funds on deposit does not pass to the payee until the check is honored. The bankruptcy court concluded that since title does not pass upon delivery of the check, such delivery is not "a parting with property or with an interest in property," *i.e.*, a transfer under the Bankruptcy Code.

Quinn argued below and argues again on appeal that reliance on state law is misplaced. The Supreme Court has stated that "[w]hat constitutes a transfer ... is necessarily a federal question, since it arises under a federal statute intended to have uniform application throughout the United States." *McKenzie v. Irving Trust Co.*, 323 U.S. 365, 369–70, 65 S.Ct. 405, 407–08, 89 L.Ed. 305 (1945). In making the argument for uniformity and for finding a transfer at time of delivery of the check Quinn relies heavily on the Ninth Circuit Bankruptcy Appellate Panel's decision in *In re Trois Etoiles, Inc.*, 78 B.R. 237 (9th Cir.BAP 1987). In *In re Trois Etoiles*, the Panel expressly acknowledged and rejected prior decisions relying on state law, including *Matter of Isis Foods* and *Matter of Bridges Enterprises*. 78 B.R. at 238. The Panel instead looked to Ninth Circuit precedent regarding when transfers by check occur under the Code, and also considered commercial reality in concluding that a debtor's tendering of a check to the creditor before filing the bankruptcy petition constitutes a pre-petition transfer, despite the fact that the check was not honored until after the petition had been filed.

The bankruptcy court countered Quinn's arguments in two ways, which the Trustee has adopted in his response to this appeal. First, the bankruptcy court noted that other provisions of the Bankruptcy Code refer to state law for clarification of parties' rights, *see, e.g.*, 11 U.S.C. § 522 (subsection [b][1] allows exemptions to be defined by state law), and also reasoned that the desired uniformity can be achieved through reference to the Uniform Commercial Code. Reference to state law may be helpful in determining rights under the Bankruptcy Code, and in fact in *McKenzie* the Court determined the comparative rights of the payee versus lien creditors under state law. 323 U.S. at 370, 65 S.Ct. at 408. However, the Court was applying a provision under the Bankruptcy Act of 1898 which was comparable to Section 547(e)(1)(B) of the Code, which defines the time of transfer in terms of when the payee's rights became

superior to the claim of any possible contract creditor who obtains a judicial lien.[2] The Fourth Circuit has ruled that the Section 547(e)(1)(B) standard applies only where security interests are involved. *In re Continental Commodities, Inc.*, 841 F.2d 527, 530 (4th Cir.1988).

In contrast, the general definition of "transfer" in Section 101(50) of the Code applies to all transactions and is sufficiently broad that it need not be interpreted as making the timing of a transfer dependent on the respective rights of the payee against other creditors. Therefore, it does not require a reference to such rights as defined under state law.

Moreover, although adoption of the UCC by all but one state means that the statutory language in those states is comparable, a fair reading of UCC Section 3–409 would not *compel* a finding that passage of a check from debtor to creditor is not a transfer under 11 U.S.C. § 101(50). An at least equally reasonable interpretation of the two provisions is that regardless of when title to the funds vests in the payee, delivery of the signed check is a mode of parting with the debtor's interest in those funds. The check is an unconditional order to pay the funds, UCC § 3–104(1)(b) and 2(a), (b), so that at the time of delivery the debtor has essentially completed his affirmative acts necessary to make the transfer. The possible intervening events mentioned by the trustee and the bankruptcy court, such as a stop-payment order, are subsequent affirmative acts needed to negate that transfer, and in the absence of them the debtor's relinquishment of funds is complete.[3]

The bankruptcy court also found for the Trustee because it was unpersuaded by the Ninth Circuit Bankruptcy Appellate Panel's decision in *In re Trois Etoiles*. The bankruptcy court rejected the Panel's position as erroneously based on analogies with the "contemporaneous exchange" and "ordinary course of business" exceptions to the preference rules. 11 U.S.C. § 547(c). Numerous courts, including recently the Fourth Circuit, have found that for the purposes of the Section 547(c) exceptions a transfer should be considered made upon delivery rather than when the check is honored. *See In re Continental Commodities*, 841 F.2d at 530; *O'Neill v. Nestle Libbys P.R., Inc.*, 729 F.2d 35, 37 (1st Cir. 1984); *Bernstein v. RJL Leasing (In re White River Corp.)*, 799 F.2d 631, 633 (10th Cir.1986). Those decisions were based in part on the legislative history of the provisions, which contains explicit statements about the timing of transfers, *see* 124 Cong.Rec. S17414 (daily ed. Oct. 6, 1978) (statement of Senator DeConcini) ("Payment is considered to be made when the check is delivered for purposes of Sections 547[1] and [2]."), *cited in O'Neill*, 729 F.2d at 37, but the courts also considered policy justifications and commercial reality. *See In re Continental Commodities*, 841 F.2d at 530; *O'Neill*, 729 F.2d at 37; *In re White River*, 799 F.2d at 633–34.

The bankruptcy court found analogies to this body of law inapposite because the more general exceptions to Section 547 should not be grafted onto the narrow, limited exceptions already included in Section 549.[4] This argument tends to put the cart before the horse. Whether Quinn must rely on the exceptions to Section 549 rather than those under Section 547(c) depends on whether the transfer occurred before or after the petition was filed, the very question at issue. If the transfer occurred at delivery, then neither Section 549(a) nor the exceptions thereto will apply; rather the payment would be a pre-petition transfer within ninety days of filing and Quinn would presumably seek protection under the Section 547(c)(2) ordinary course of business exception to the preference

---

**2.** 11 U.S.C. § 544(a)(1) gives the Trustee in Bankruptcy the status of a prospective judicial lienholder. The Fourth Circuit's decision in *In re Continental Commodities* suggests that this is irrelevant to the timing of the transfer in this case.

**3.** Even if the check represented payment conditioned on nonoccurrence of an intervening event, the court notes that § 101(50) includes absolute *or* conditional modes of parting with property.

**4.** *See* n. 1, *supra.*

rule. Therefore, for the purpose of deciding when the transfer occurred, reference to judicial treatment under the Code as a whole is appropriate.[5]

In short, the statutory language and applicable precedent do not require rejection of the analysis in *In re Trois Etoiles* in favor of the *Matter of Isis Foods* and *Matter of Bridges Enterprises* decisions. Uniformity is not advanced by reference to state law and the UCC and, even if applicable, neither compels a finding that the transfer occurs when the check is honored.

Policy considerations can support either position, as the valid arguments of the bankruptcy court and the parties show. However, upon consideration of the equities and commercial realities the court finds that the better interpretation of the rule, to be uniformly applied, favors treatment of transfers by check as made at the time of delivery.

The court acknowledges the Trustee's contention that one of the objectives underlying the Code is equal treatment of creditors within a class. The Trustee argues that allowing Quinn to retain the check proceeds conflicts with this objective because it treats Quinn better than other unsecured creditors, who are unlikely to recover full payment on their claims. Also, had Quinn been unable to cash the check after the petition was filed, because the account was frozen or had insufficient funds, then Quinn would have been relegated to making a claim on either the check or the underlying transaction as an unsecured creditor. This demonstrates the contingent nature of the payee's interest, and suggests that but for a fortuity Quinn would unquestionably be just another unsecured creditor.

The Trustee's valid and persuasive arguments are counterbalanced by more persuasive policy and equitable considerations.

First, the interests of the estate and the policies underlying the Code are not substantially affected by construing "transfer" broadly, in keeping with the statutory definition. The effect of treating transfers by check as made upon delivery will simply be to characterize more such transfers as pre-petition. The Trustee will still be able to avoid those which were not in the ordinary course of business or were not part of a contemporaneous exchange, but will do so under the preference statute.[6] The trade creditors dealing with the debtor in the ordinary course of business (and the person who exchanges value for value) will continue to be protected, as intended by Congress. *See O'Neill*, 729 F.2d at 37 (quoting S.Rep. No. 989, 95th Cong., 2d Sess. 88, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5874).

Second, treating the debtor's checks as transfers comports with the commercial reality, and is consistent with the expectations of those trade creditors, like Quinn, whose willingness to continue doing business provides the debtor an opportunity to avoid bankruptcy. *In re Continental Commodities*, 841 F.2d at 530 (citing *O'Neill*, 729 F.2d at 37–38 [checks are normally considered present payments between parties, so the delivery should supply the time of transfer]; *In re White River*, 799 F.2d at 634 [in commercial world receipt of check, not date it clears, is customarily treated as the date of payment] [quoting *Young Supply Co. v. McLouth Steel Corp.*, 55 B.R. 356, 357 (E.D.Mich. 1985) ] ).

The Fourth Circuit implied several years ago that courts should not attempt to alleviate the harsh results the Code sometimes dictates against creditors. *See Lake v. New York Life Ins. Co.*, 218 F.2d 394, 399 (4th Cir.), *cert. denied*, 349 U.S. 917, 75 S.Ct. 606, 99 L.Ed. 1250 (1955). However,

---

**5.** Interestingly, *In re Midwest Boiler & Erectors, Inc.*, 54 B.R. 793 (Bankr.E.D.Mo.1985), relied on by the bankruptcy court and the Trustee, involved a challenge under Section 547.

**6.** The court recognizes that some payments not in the ordinary course which are delivered more than ninety days before filing but honored

within ninety days will not be included in the estate. The court does not believe that choosing this description of the estate will hinder the objectives underlying the preference rules because the debtor will have at most limited ability to plan its filing more than ninety days in advance, and to dissipate its assets accordingly.

this does not mean that where the language of the Code is susceptible to two reasonable interpretations the court must choose the one which operates more harshly.

The parties agreed in the bankruptcy court and on appeal that there are no disputed issues as to any material fact. Since the transfer was pre-petition, the Trustee may not avoid the transfer pursuant to 11 U.S.C. § 549. Accordingly, the order and judgment of the bankruptcy court requiring Quinn Wholesale, Inc., to return $72,444.62 plus interest and denying Quinn's motion for summary judgment is reversed.[7]

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

---

**7.** Because the court finds that the transfer was made before the petition was filed, Quinn's contention that the transfer was authorized under 11 U.S.C. §§ 1107 and 1108 need not be addressed.