**In re J.I.C. INSTALLATIONS, INC., Debtor.**

**Jon Yard ARNASON, as Trustee of J.I.C. Installations, Inc., Plaintiff,**

v.

**SATIN AMERICAN CORP., INC., Defendant.**

**Bankruptcy No. 85-30418. Adv. No. 88-7014.**

United States Bankruptcy Court, S.D. New York.

Dec. 27, 1989.

Jon Yard Arnason, Haight, Gardner, Poor & Havens, New York City (Alan Heblack, of counsel), for Trustee in Bankruptcy.

McNamara and Kenney, Bridgeport, Conn. (James F. Kenney, of counsel), for defendant.

DECISION ON CROSS MOTIONS FOR SUMMARY JUDGMENT ON TRUSTEE'S COMPLAINT TO SET ASIDE PREFERENTIAL TRANSFER

JEREMIAH E. BERK, Bankruptcy Judge.

This is an adversary proceeding brought pursuant to 11 U.S.C. Section 547(b) of the Bankruptcy Code ("Code"), by the Chapter 7 Trustee ("Trustee" or "Plaintiff") against Satin American Corp., Inc. ("Satin" or "De-

fendant") for a determination of whether or not a payment made pre-petition by the Debtor, J.I.C. Installations, Inc., by means of a postdated check is a voidable preferential transfer. Both parties to this proceeding have moved for summary judgment pursuant to Bankruptcy Rule 7056 and have filed a statement of agreed facts.

## I. FINDINGS OF FACT

The parties stipulate that the following facts are not in dispute.

On October 11, 1985, the Debtor filed a petition for relief pursuant to Chapter 11 of the Code. Subsequently, the case was converted to Chapter 7 liquidation on August 15, 1986. The Chapter 7 Trustee, the plaintiff herein, was appointed by the U.S. Trustee on August 21, 1986.

The parties agree that on December 6, 1984, the Debtor contacted Satin for the purpose of purchasing electrical equipment totaling $66,370.00. The order was shipped and invoiced by Satin on January 4, 1985. The Debtor made two partial payments totaling $17,370.00. Then, on Friday, July 12, 1985, the Debtor delivered a postdated check (dated July 15, 1985) to Satin in the amount of $25,000.00, which Satin deposited to its account on July 12. The check cleared and was paid by Debtor's bank on July 15, 1985.

All but one of the requisite elements to establish a preferential transfer pursuant to Code § 547(b) are agreed to by the parties, and counsel are commended for their efforts in narrowing the issue presented. The Trustee and Satin concur that the payment constituted a transfer, made to or for the benefit of Satin and that it was made on account of an antecedent debt owed by the Debtor to Satin. The parties also acknowledge that the Debtor was insolvent at the time of the transfer, and that such transfer enabled Satin to receive more than it would have been paid if the Debtor had filed a Chapter 7 liquidation case. No defenses such as are available under Code § 547(c) are raised.

The sole issue presented is the date of the transfer, that is, did the transfer take place on July 12 or July 15, 1985.[1]

The Trustee argues that the transfer occurred on July 15, 1985, the date of the check and the day on which it was honored and paid by Debtor's bank. In support of its summary judgment motion, Satin argues that the transfer occurred beyond the 90-day preference period. Specifically, it alleges that the date of delivery, July 12, 1985, controls regardless of the fact that the check was postdated.

The parties agree that if the transfer occurred on July 12, the payment is outside the 90-day preference period. If, however, the transfer occurred on July 15, the parties concur that payment was within the 90-day preference period. Thus, the only question presented by the respective motions for summary judgment is when the "transfer" took place.

1. Pursuant to an addendum to their stipulation filed September 15, 1989, the parties agreed that they calculated the 90-day preference period under Code § 547(b)(4)(A) by counting the calendar days forward from the date of "transfer". Specifically, they stipulated that the "90th day after July 12, 1985 was October 10, 1985 and the 90th day after July 15, 1985 was October 14, 1985." The petition was filed on October 11, 1985. We note, however, that the law concerning the method for calculating this period of time is unclear. *See* Andrew "Computation of the Bankruptcy Preference Period: A Trap for Practitioners," 90 Com.L.J. 170 (1985).

Some courts hold that the preference period is calculated by counting backwards from the date the petition is filed. *E.g., In re Antweil,* 97 B.R. 63, 64 (Bankr.D.N.M.1988); *In re White,* 64 B.R. 843, 847 (Bankr.E.D.Tenn.1986); *Matter of Schneider,* 44 B.R. 961, 962–63 (Bankr.W.D.Wis. 1984); *In re Enterprise Fabricators, Inc.,* 36 B.R. 220, 223 (Bankr.M.D.Tenn.1983); *In re Larson,* 21 B.R. 264, 267 n. 2 (Bankr.D.Utah 1982); *In re B & M Contractors, Inc.,* 2 B.R. 110, 112 (Bankr. N.D.Ala.1979) (applying former Bankruptcy Act § 60(a).

Other courts use a forward-counting approach commencing with the date of transfer. *E.g., In re Fabmet Corp.,* 31 B.R. 414, 416 (Bankr.W.D.N. Y.1983) ("Time does not run backward, even in bankruptcy matters."); *In re Mailbag International, Inc.,* 28 B.R. 905, 909–10 (Bankr.D.Conn. 1983).

There is also a split of authority as to whether Bankruptcy Rule 9006 applies to the 90-day preference period computation under Code § 547(b)(4). The parties did not address this issue.

## II. DISCUSSION

A. Code Section 547(b) provides:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The Code, in turn, defines "transfer" in Section 101(50):

"transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption....

The preeminent case in this District regarding the date of a transfer by check is *In re Sider Ventures & Services Corp.*, 33 B.R. 708 (Bankr.S.D.N.Y.1983), *aff'd*, 47 B.R. 406 (S.D.N.Y.1985). There a check for $100,000.00 was mailed outside the preference period but cleared the debtor's bank within the preference period. The check was dated the same day it was delivered.

After analyzing Code § 547 and the New York Uniform Commercial Code, Bankruptcy Judge Abram concluded that the date the check was mailed, i.e., delivered, determined the date of transfer for preference purposes. In reaching this conclusion, the court relied primarily on Code § 547(e)(2)(A), which states:

(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made—

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time....

Specifically, the court concluded that this section and its ten-day savings period applies to the check delivery and collection process. It reasoned:

The court is of the opinion that the construction that it has given to Bankruptcy Code § 547(e)(2)(A) represents a rational incorporation of state law commercial concepts, as well as according with the commercial reality that checks are a major medium of exchange, with the payment of obligations routinely made by check.

*In re Sider Ventures & Services Corp.*, 33 B.R. at 711.

Although the court acknowledged that Code § 547(e)(2)(A) employs the term "perfected", a term commonly used in connection with security interests, it concluded that "there is nothing inherent in the term or its use in Bankruptcy Code § 547(e)(2)(A) which precludes its application to the check delivery and collection process." *In re Sider Ventures & Services Corp.*, 33 B.R. at 711.

The notion that the delivery date of a check is the critical date for preference purposes has, however, been rejected by other courts. *E.g., Matter of Isis Foods, Inc.*, 37 B.R. 334, 336 (W.D.Mo.1984); *In re AMWC, Inc.*, 94 B.R. 428, 433 (Bankr.N.D. Tex.1988); *In re W & T Enterprises, Inc.*, 84 B.R. 838, 839 (Bankr.M.D.Fla.1988); *In re Newman Companies, Inc.*, 83 B.R. 571, 572 (Bankr.E.D.Wis.1988); *Matter of Fasano/Harriss Pie Co.*, 43 B.R. 871, 873–74 (Bankr.W.D.Mich.1984), *aff'd*, 71 B.R. 287 (W.D.Mich.1987); *Matter of Georgia Steel, Inc.*, 38 B.R. 829, 834 (Bankr.M.D.Ga.1984); *In re Video East, Inc.*, 33 B.R. 61, 62–63

(Bankr.E.D.Pa.1983); *In re Skinner Lumber Co., Inc.* 27 B.R. 669, 670–72 (Bankr.D. S.C.1982); *In re Fabric Buys of Jericho, Inc.,* 22 B.R. 1010 (Bankr.S.D.N.Y.1982).

The view that the delivery date controls, rather than the date of acceptance and payment by the drawee bank, nevertheless, has its supporters. *E.g., In re Wolf & Vine,* 825 F.2d 197, 200–02 (9th Cir.1987); *In re Kenitra, Inc.,* 797 F.2d 790, 791 (9th Cir.1986), *cert. denied sub nom. Robert K. Morrow, Inc. v. Agri-Beef Co.,* 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 980 (1987); *Shamrock Golf Co. v. Richcraft, Inc.,* 680 F.2d 645, 646 (9th Cir.1982); *In re Antweil,* 97 B.R. 69, 70 (Bankr.D.N.M.1989); *Matter of Global International Airways Corp.,* 80 B.R. 990, 994 (Bankr.W.D.Mo.1987); *In re Amarex, Inc.,* 74 B.R. 378, 382 (Bankr. W.D.Okla.1987), *aff'd,* 88 B.R. 362 (W.D. Okla.1988); *In re Walker Industrial Auctioneers, Inc.,* 45 B.R. 452, 453–54 (Bankr. D.Or.1984); *See* 4 L. King, *Collier on Bankruptcy* ¶ 547.16[4] at 547–66 (15th ed. 1989) ("The majority of courts have correctly found the transfer is made when the check is delivered and not when it is honored."). As one court stated: "It is plain ... that the latest and the better-reasoned decisions, those which comport with business practice and the non-bankruptcy law which actually governs the customs of trade, are those which focus on the date of delivery." *Matter of Global International Airways Corp.,* 80 B.R. at 994. In addition, the date of delivery of a check was found to be the controlling date in the context of a postpetition transfer. *Quinn Wholesale, Inc. v. Northen,* 873 F.2d 77 (4th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 151, 107 L.Ed.2d 109 (1989).

Further, in those jurisdictions favoring the date of delivery approach, a divergence of opinion exists as to whether Code § 547(e)(2) should be applied to transfers made by check. There are those that agree with *Sider Ventures. E.g., In re Gulino,* 779 F.2d 546, 549 (9th Cir.1986); *In re Advance Industries, Inc.,* 63 B.R. 677, 678–79 (Bankr.N.D.Iowa 1986); *In re Blanton Smith Corp.,* 37 B.R. 303, 308 (Bankr. M.D.Tenn.1984) (as *Sider Ventures* "comports with the express language of § 547(e), this court is persuaded that it represents the proper interpretation of when a transfer by check occurs under § 547(b)(4)"); Zaretsky, "Check Payments and Repetitive Filings," 194 N.Y.L.J., Aug. 15, 1985, at 1 ("Although the timing rules of § 547(e) were aimed mainly at secured transactions Judge Abram correctly noted that nothing in the statute or legislative history expressly limits § 547(e) to those transactions."). And there are those that disagree with it. *E.g., In re AMWC, Inc.,* 94 B.R. at 433 (§ 547(e)(2) is "irrelevant" to a transfer by check); *In re Walker Industrial Auctioneers, Inc.,* 45 B.R. at 454 ("A careful reading of § 547(e) reveals that this section is only concerned with the perfection of security interests in various kinds of property."); *In re Insulation Materials, Inc.,* 47 B.R. 832 (Bankr.E.D.Tenn.1985); 4 L. King, *Collier on Bankruptcy* ¶ 547.16[4] at 547–66 (15th ed. 1989) (cases following *Sider* "erroneously" resolve this issue); Note, "Timing of Payments by Check Under Section 547 of the Bankruptcy Code," 7 Cardozo L.Rev. 887, 899 (1986) ("the legal analysis used by the *Sider* court is flawed").

In its analysis of Code § 547(e)(2)(A), the Bankruptcy Court focused on the phrase that "a transfer is made at the time such transfer takes effect." It then recognized, as has the U.S. Supreme Court, that when a preferential transfer occurs is a federal question, but one that must be decided by reference to state law. *In re Sider Ventures & Services Corp.,* 33 B.R. at 710; *McKenzie v. Irving Trust Co.,* 323 U.S. 365, 65 S.Ct. 405, 89 L.Ed. 305 (1944). In *McKenzie,* the Supreme Court noted, "What constitutes a transfer and when it is complete ... is necessarily a federal question...." *Id.* at 369–70, 65 S.Ct. at 407–08. Nevertheless, it concluded, "The state standards which control the effectiveness of a transfer likewise determine the precise time when a transfer is deemed to have been made or perfected." *Id.* at 370, 65 S.Ct. at 408.

Thus, the court in *Sider Ventures* turned to the applicable state law found in New

York's version of the Uniform Commercial Code.

> The delivery of a check initiates the normal and customary process by which the drawer effects the transfer of its property comprised of bank deposits. It is well to remember that a check is a direction to a third party, the bank, to make payment to the payee and to deduct the amount of the payment from the drawer's funds on deposit with the bank. Furthermore, it should be remembered that the relationship between the drawer and the bank is a debtor-creditor relationship, as becomes evident upon the insolvency of the bank. The check enables the payee to effect the transfer of monies out of the account; without the check, the payee would be unable to effect the transfer.
>
> The importance of the check as a means of effecting a transfer of payment is emphasized by consideration of the impact of the delivery of the check on the underlying obligation. N.Y. UCC § 3-802(1)(b) provides for the suspension of the obligation *pro tanto* until the check is presented. Discharge on the check discharges the obligation. If the check is dishonored, an action may be maintained either on the instrument or on the obligation.

*In re Sider Ventures & Services Corp.*, 33 B.R. at 710 (citation omitted).

Code § 547(e)(1)(A), the court noted, provides that a transfer is "perfected" when the creditor "cannot acquire a judicial lien that is superior to the interest of the transferee." The court therefore reasoned that once a check is paid the transfer is perfected. It then observed that Code § 547(e)(2)(A) provides that where perfection occurs within 10 days after a transfer takes effect between the parties, "a transfer is made on the date it takes effect, not on the date it is perfected." *In re Sider Ventures & Services Corp.*, 33 B.R. at 711. Thus, the court concluded that the transfer took effect on the date the check was delivered because the transfer was perfected within the 10–day period by its successful presentment. *Id.* In light of the affirmance by our District Court, *In re Sider Ventures & Services Corp.*, 47 B.R. 406 (S.D.N.Y.1985), we are bound to follow its holding and to apply Code § 547(e)(2)(A) to transfers made by check.

B. In our case the check was postdated. Therefore, the only issue we need decide is whether this fact removes it from the holding of *Sider Ventures.* For the following reasons we believe it does not.

First, the postdating of a check does not make it any more conditional than a check payable on demand, nor does it affect the negotiability of the instrument. Relevant excerpts from *Brady on Bank Checks* analyzing a postdated check explain:

> The negotiability of an instrument is not affected by the fact that it is undated, postdated or antedated. Where an instrument is antedated or postdated, the time when it is payable is determined by the stated date if the instrument is payable on demand.
>
> * * * * * *
>
> The fact that a check is postdated does not affect its negotiable character.
>
> * * * * * *
>
> Postdating does not make a check a qualified or conditional obligation.
>
> * * * * * *
>
> A postdated check is payable on or after the day of its date, being in effect the same as if it had not been issued until that date.
>
> * * * * * *
>
> Such a check may be transferred in the same manner and with the same rights as other checks, except that the holder is not entitled to present it or demand payment until the day of its date.

H. Bailey, *Brady on Bank Checks*, §§ 2.9, 2.10 at 2–14–17 (6th ed. 1987) (footnotes omitted).

Second, payment by check, be it postdated or not, is exactly the type of transfer contemplated by Code §§ 547(b) and 101(50). A payment by check is different from a cash payment. A check is not fungible and may be dishonored, either justifi-

ably or wrongfully. Additionally, there are certain liabilities associated with payment by check that do not pertain to cash transactions. The drawer or the endorser may raise defenses. As one writer observed:

> The delivery of a check to a creditor, even one payable to the creditor in the full amount of an obligation, does not equal payment of the obligation. The effect of the delivery is merely to suspend the obligation. The obligation is not satisfied until the check is honored. If the check is not honored, the creditor may enforce either the check or the underlying obligation. If cash is tendered to the creditor, the obligation is immediately satisfied.

Fry, "Cash Only—No Checks Accepted: A Reply," 90 Com.L.J. 175, 175 (1985).

Likewise, a check under New York law is "merely a request to the drawee bank" to pay the payee and does not "operate as an assignment" of any funds. *Klein v. Tabatchnick,* 610 F.2d 1043, 1049 (2d Cir. 1979); *Matter of Duffy,* 3 B.R. 263, 265 (Bankr.S.D.N.Y.1980) ("A check itself does not vest in the payee any title to or interest in the funds held by the drawee bank.").

*Sider Ventures,* specifically recognized the conditional nature of a payment made by check. Having already noted that Code § 101(50) includes in its definition of transfer one that is "conditional", the court explained:

> That perfection of payment by check can be defeated in a number of ways, such as by the insolvency of the bank, a stop payment order, an insufficiency of funds in the drawer's account, or failure of consideration in the underlying transaction, is apparent. Yet to say that perfection can fail merely begs the question in a case in which perfection occurs.

*In re Sider Ventures & Services Corp.,* 33 B.R. at 711. And, as another court observed, "Even if the check represented payment conditioned on nonoccurrence of an intervening event, the court notes that § 101(50) includes absolute *or* conditional modes of parting with property." *Quinn Wholesale, Inc. v. Northen,* 100 B.R. 271, 274 n. 3 (M.D. N.C.1988), *aff'd,* 873 F.2d 77 (4th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 151, 107 L.Ed.2d 109 (1989).

*Sider Ventures* noted an earlier decision involving a postdated check and rejected its holding that the "date of payment, and not the date of delivery is crucial in determining when the preferential transfer occurred," *Matter of Duffy,* 3 B.R. at 265. Also, Plaintiff cites *In re Lyon,* 121 F. 723 (2d Cir.1903) which holds that the transfer takes place when the funds are made available on a postdated check.

*Duffy* held that a postdated check was transferred on the date it was accepted rather than delivered. It appears that this holding was not based on the fact that the check was postdated, but instead focused on the fact that payment was made by check. However, *Duffy* specifically rejected the argument that once the check is paid, the date of transfer should revert back to the date it was delivered. *Sider Ventures* refused to follow *Duffy,* albeit without explanation.

*Lyon* also considered when a postdated check is transferred for preference purposes. Applying § 60(a) of the former Bankruptcy Act, the Second Circuit in *Lyon* held:

> ... the mere giving of the post-dated checks was not payment, certainly not such a payment of money as would constitute a transfer of property, within the language of section 60a.... The transfer of property took place when funds of the estate were actually turned over to the holder of the check.

*In re Lyon,* 121 F. at 726.

Nevertheless, *Lyon* is not dispositive of the issue at hand for it was decided under different preference law. Section 60(a) of the former Bankruptcy Act contained no language similar to the savings provision of Code § 547(e)(2)(A). Specifically, § 60(a)(2) provided in relevant part:

> ... a transfer of property other than real property shall be deemed to have been made or suffered at the time when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a

simple contract could become superior to the rights of the transferee.

*Collier's* notes to this Section state:

> In other words, when a transfer of personal property is challenged as preferential, the time the transfer was made will be determined to be the time the transfer was so far perfected under applicable law as to be superior to the rights of a creditor holding a lien obtained by legal or equitable proceedings upon a simple-contract [sic].

1976 Collier Pamphlet Edition *Bankruptcy Act and Rules* § 60 at 167 (1976).

A transfer by check, whether postdated or not, under former § 60a would require that the check first be accepted for it to be perfected. And, in fact, this was the "majority" view under the 1898 Bankruptcy Act. Hughes, "Preference Action Fails When Check Delivered Outside 90–Day Period: Ninth Circuit," Norton Bankruptcy Law Advisor 1, 2 (Jan.1987). As one court explained, a transfer by check was not perfected until the check was honored because at any time prior thereto a creditor "could prevent collection of the funds through such means as garnishment of the bank account." *Nicholson v. First Investment Co.,* 705 F.2d 410, 413 (11th Cir.1983). As *Sider Ventures* observed, the Bankruptcy Act and the cases decided under it are not applicable as they do not have "precedential value in construing the plainly different provisions of the Bankruptcy Code." *In re Sider Ventures & Services Corp.,* 33 B.R. at 711.

Under New York Law, a postdated check negotiated prior to its date is not a "check" as defined in N.Y.U.C.C § 3–104(2)(b) because it is not payable on demand. It is, instead, a "draft" as defined in N.Y.U.C.C § 3–104(2)(a). *Allied Color Corp. v. Manufacturers Hanover Trust Co.,* 484 F.Supp. 881, 883 (S.D.N.Y. 1980).

This may be a distinction without a difference under New York law for a check is merely a "particular kind of draft or bill of exchange, namely, one drawn on a bank and payable on demand." 80 N.Y.Jur.2d, *Negotiable Instruments and Other Commercial Paper* § 26 at 60–61 (1989). Further, in New York the date of issue is "not an essential of commercial paper" as negotiability is "unaffected by the absence of a date." *Id.* at § 148 at 180.

> A postdated check is nonetheless a check. It is not a representation that funds are available when the check is given, but rather is in the nature of a promise to discharge a present obligation at a future date. It is payable on demand on or after the day of its date.
>
> * * * * * *
>
> A postdated check is in effect only a representation that the drawer expects to have funds in the bank with which to pay the check on the date named therein, and such a check is payable on or after the day of its date in accordance with the provision of Article 3 of the [Uniform Commercial] Code that where an instrument is antedated or postdated, the time it is payable is determined by the stated date if the instrument is payable on demand.

*Id.* at §§ 29, 360 at 65–66, 396.

Rather than focusing on the date or the absence thereof, New York law under its version of the Uniform Commercial Code looks to date of delivery of the check. "Until delivery occurs the instrument is a nullity and not the subject of ownership." *Id.* at § 206 at 231. Under New York law, a check is deemed made or issued at the time it is delivered. *Id.* Thus, the "time of delivery is the time where the payee of a postdated check becomes the owner thereof." *Id.* at § 208 at 232.

Third, assuming, *arguendo,* that a postdated check is substantively different from a check payable on demand, the savings provision of Code § 547(e)(2)(A) nevertheless provides a ten-day "reach back". In our case the check was delivered to Satin on July 12, a Friday. It was postdated to Monday, July 15. The Debtor's bank accepted the check on July 15. The difference between the date of delivery and the date of acceptance by the Debtor's bank was three days, well within the ten-day savings provision of Code § 547(e)(2)(A).

Had the check been postdated to a period longer than ten days, Code § 547(e)(2)(B) would have required the date of acceptance to be the determinative date under Code § 547(b)(4).[2] As one court explained:

> ... under the general law, all checks are classified as credit transactions whether they are postdated or not. The provisions of § 547 are intended to recognize this, but to give the delivery of a check, so long as promptly paid, the significance of payment when it is delivered.

*Matter of Global International Airways Corp.*, 80 B.R. at 995 n. 9.

There is disagreement among those courts which have considered the issue of when a postdated check constitutes a transfer under Code § 547(b)(4). However, the disagreement is essentially the same as that which exists on the issue of when a check itself constitutes a transfer under Code § 547(b)(4). In those jurisdictions which apply neither Code § 547(e)(2)(A) nor any other savings provision to payment by check, the courts necessarily find that a postdated check is transferred on the date that it is honored. *In re Johnson,* 25 B.R. 889, 897 (Bankr.E.D.Tenn.1982). Cases under the Bankruptcy Act, as previously noted, are not helpful in this regard as there was no similar savings provision, and, in addition, the fact that a check was postdated often generated other issues not relevant any longer under the Bankruptcy Code. *E.g., International Minerals & Chemical Corp. v. Moore,* 361 F.2d 849 (5th Cir.1966) (there was no preference established for payments by postdated check as the creditor had no knowledge that it would receive a preference).

In those jurisdictions employing either Code § 547(e)(2)(A) or some other savings provision, the courts tend not to distinguish between presently-dated checks and postdated checks. *In re Antweil,* 97 B.R. at 70 ("the date of delivery rule should apply to post-dated checks"); *Matter of Global International Airways Corp.*, 80 B.R. at 995. The court in *Global* explained:

> This court does not believe, however, that the fact that some of the delivered checks were postdated has any effect on the rule of *In re Kenitra, supra,* and the other "date-of-delivery" decisions. In all instances, the checks were honored within the ensuing 30–day period, in consonance with Kenitra's requirements and the postdating did not relate to the time of intended payment, but only to the time of presentment to the bank. And, under the bankruptcy law of § 547, payments by postdated checks are deemed to have been made when the check is delivered.

*Matter of Global International Airways Corp.*, 80 B.R. at 995.

As has been noted, in our jurisdiction the savings provisions of Code § 547(e)(2)(A) apply to transfers by check. Thus, the fact that the check in our case was honored within ten days of its delivery compels us to hold that the payment made by the Debtor to Satin occurred on July 12 and constituted a transfer outside the 90–day preference period of Code § 547(b)(4)(A).

## III. CONCLUSIONS OF LAW

1. This Court has jurisdiction of the subject and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

2. Recently, the Third Circuit acknowledged a presumption that a postdated check should be deemed transferred for purposes of Code § 547(c)(4) on either the date on the face of the check or the date that the check clears the bank. *In re New York City Shoes, Inc.,* 880 F.2d 679 (3d Cir.1989). It noted, however, that this presumption may be rebutted if the creditor can demonstrate that the parties treated the transaction as a cash transaction. If the creditor rebuts this presumption, the date of transfer would be the date the debtor delivered the check. The court explained:

> ... there may be individual cases in which a check is so slightly postdated, the solvency of the debtor is so patent or widely believed, or the intent of the parties is so explicit, that it becomes clear that the parties were treating the postdated check as cash. We thus hold that there is a presumption that a postdated check is not transferred on the date it is delivered, but that the presumption can be rebutted by evidence that in fact the parties did treat the postdated check as cash.

*In re New York City Shoes, Inc.,* 880 F.2d at 684.

2. By application of Code § 547(e)(2)(A), the "transfer" under Code § 547(b)(4)(A) was "made" on July 12, 1985, the date of delivery of the postdated check, and thus beyond the 90-day preference period.

3. Defendant's motion for summary judgment is granted. Plaintiff's motion for summary judgment is denied. A separate Order shall issue in conformity herewith.